UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE CRISTOBAL MENESES,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ JR. et al.,<br><br>Respondents. | Case No. 2:25-cv-11206-MCS-PVC<br><br>**ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 2)** |

    Petitioner Enrique Cristobal Meneses brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed an ex parte application for a temporary restraining order and a preliminary injunction. (Appl., ECF No. 2.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 7.) Respondents Ernesto Santacruz Jr., Acting Field Office Director of the Los Angeles Office of Detention and Removal, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security ("DHS"); Todd M. Lyons, Acting Director of ICE; Kristi Noem, DHS Secretary; and Pam Bondi, U.S. Attorney General, filed a brief opposing the application. (Opp'n, ECF No. 9.)[1] The Court heard argument on the

---

[1] Petitioner filed an unauthorized reply brief, (*See* Reply, ECF No. 10), which the Court

1

application on December 1, 2025, and orally issued a preliminary injunction. This Order memorializes the Court's reasoning.[2]

## I. BACKGROUND

According to the petition and application materials, Petitioner was born in Mexico in 1983 and brought to the United States when he was 14 years old. (Patel Decl. ¶¶ 7–8, ECF No. 1-1.) In 2003, Petitioner was convicted of attempted murder for shooting at a vehicle containing rival gang members and sentenced to 27 years to life in prison. (*Id.* ¶ 9.) On November 10, 2020, Governor Gavin Newsom granted Petitioner clemency and commuted his sentence. (*Id.* ¶ 15; *id.* Ex. F.) Petitioner was then released from custody on November 19, 2020; however, ICE immediately detained him pursuant to a Final Administrative Removal Order. (*Id.* ¶¶ 16–17.) On February 11, 2022, an

---

strikes. The documents filed in support of Petitioner's reply brief contain information that should have been filed under seal, including protected medical information and the full name of Petitioner's minor stepson. *See* Fed R. Civ. P. 5.2(a). The parties shall endeavor to comply with the local rules outlining the procedures for filing documents under seal, including Local Rule 79-5.2.2, in all future filings. Because the Court strikes the unauthorized reply and supporting documents, the Court on its own motion finds good cause to seal ECF Nos. 10-1 and 10-2, and no further action is required at this time.

[2] After the Court orally issued a preliminary injunction, Petitioner amended the petition to name as a respondent Fereti Semaia, Warden of Adelanto ICE Detention Facility, where Petitioner was relocated after his counsel prepared the original petition. (*See* Am. Pet., ECF No. 11.) This Order rests upon the original petition and application for preliminary injunctive relief upon which the Court granted the injunction. Notwithstanding, Semaia is (or was) an appropriate respondent to this action. *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir. 1992) ("The proper respondent in a federal habeas corpus petition is the petitioner's immediate custodian." (internal quotation marks omitted)). Given Respondents' counsel's representation at the hearing that he would ensure Petitioner's forthwith release notwithstanding Semaia's status as a nonparty at the time, the Court takes no action at this time to apply the preliminary injunction to Semaia. Nothing in this Order prevents Petitioner from applying for preliminary injunctive relief extending to Semaia.

immigration judge granted Petitioner's application for deferral of removal under the Convention Against Torture ("CAT"). (*Id.* ¶ 18; *id.* Ex. A.) That same day, ICE released Petitioner from custody on an Order of Supervision "because it could not effectuate his removal and it determined that he was not a flight risk or danger to the community." (*Id.* ¶ 19; *id.* Ex. B.) Since his release, Petitioner has complied with the terms of his supervised release. (*Id.* ¶ 20.) He lives with his fiancée and her eight-year-old son, whom Petitioner calls his stepson, both of whom are U.S. citizens. (*Id.* ¶ 21.) Petitioner's fiancée and stepson both have substantial health issues and rely on Petitioner for financial, medical, and emotional support. (*Id.* ¶¶ 21–24.) Petitioner is employed as a substance abuse counselor and program coordinator at the San Fernando Recovery Center. (*Id.* ¶ 26.) He also spends time volunteering by providing "educational presentations in local high schools to raise awareness about the dangers of substance abuse, gang involvement, and the long-term impact of addiction." (*Id.*) On November 21, 2025, ICE re-detained Petitioner when he appeared for a scheduled check-in at the Los Angeles ICE Enforcement and Removal Operations Field Office. (*Id.* ¶¶ 27–30.)

Petitioner claims that his re-arrest and re-incarceration violates (1) the Due Process Clause of the Fifth Amendment, (2) the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6) ("INA"), and associated regulations, and (3) the Administrative Procedure Act, 5 U.S.C. § 706(2)(D) ("APA"). (Pet. ¶¶ 110–27.) He also argues that Respondents should not be able to remove him to a third country without adequate notice and procedures in compliance with the Fifth Amendment, INA, and APA. (*Id.* ¶¶ 128–36.) He seeks a temporary restraining order and preliminary injunction requiring his immediate release and preventing his re-arrest absent a constitutionally compliant hearing before a neutral adjudicator. (Appl. 25.) The Court issued an order prohibiting Respondents from relocating Petitioner outside the district while the instant application is pending. (Order Setting Br. Schedule 3, ECF No. 7.)

## II. LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of his Fifth Amendment procedural due process claim. (Pet. ¶¶ 110–14; Appl. 12–21.)[3]

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention,

---

[3] The Court does not opine on the likelihood of success on the merits of the substantive due process, INA, or APA claims.

or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."); *accord Garro Pinchi*, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

> finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to due process challenge to immigration detention, noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *17 (E.D. Cal. Oct. 17, 2025) (collecting cases extending *Mathews* "to the context of immigration detention").

Here, Petitioner has a Final Administrative Removal Order, but he was released pursuant to an Order of Supervision in 2022. (Patel Decl. ¶¶ 17–19.) He has lived out of custody, developing deep family and community ties in the nearly four years between his release and detention. (*See id.* ¶¶ 20–26.) Due process thus protects Petitioner's liberty interest in remaining out of detention. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *26–27 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Under *Mathews*, Petitioner should have been afforded a pre-detention hearing. Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody. *Cf., e.g., id.* ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); *Garro Pinchi*, 792 F. Supp. 3d at 1034–35 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial

6

responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); *López*, 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom."); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD (HC), 2025 U.S. Dist. LEXIS 228976, at *10–11 (E.D. Cal. Nov. 20, 2025) (finding that a petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time").

There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. *Zadvydas*, 533 U.S. at 690–91. The risk of a wrongful deprivation is particularly high here given the evidence that Petitioner has complied with the terms of his release and has maintained required contacts with the federal government, including the one that precipitated his detention. (Patel Decl. ¶ 20.) Indeed, Respondents' counsel conceded at the December 1 hearing that Petitioner does not pose a flight risk. And while Petitioner was convicted of a violent crime for which he spent nearly two decades in prison, the sentence commutation and grant of clemency Petitioner received from Governor Newsom, as well as his nearly two years of volunteer work conducting "educational presentations in local high schools to raise awareness about the dangers of substance abuse, gang involvement, and the long-term impact of addiction," (*id.* ¶ 26; *id.* Ex. F), weigh heavily against a conclusion that he currently poses any risk to his community. This undisputed record raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight. *Cf., e.g., Singh v. Andrews*,

No. 1:25-cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *18 (E.D. Cal. July 11, 2025); *Pablo Sequen v. Albarran*, __ F. Supp. 3d __, No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025). Indeed, ICE *already determined* that Petitioner does not pose a flight risk or danger to his community back in 2022 when it released him pursuant to an Order of Supervision. (*See* Patel Decl. Ex. B.) Respondents have pointed to no evidence indicating that decision was erroneous or should otherwise be reassessed.

Finally, as many other courts—and this one—have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing. *See, e.g.*, Order Re: Ex Parte Appl. for TRO 8, *Martinez Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) (collecting cases); *Sira-Hurtado v. Hermosillo*, No. C25-2173-KKE, 2025 U.S. Dist. LEXIS 232795, at *11 (W.D. Wash. Nov. 26, 2025) (finding the "Government's interest in re-detaining noncitizens such as Petitioner who were initially released years ago without a hearing is minimal").

Respondents do not meaningfully engage with Petitioner's Fifth Amendment claim. They primarily argue that relief is unavailable because "there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future." (Opp'n 3.) However, Respondents adduce no evidence in support of that position other than the assertion that the government is "currently arranging for" Petitioner's removal to a third country. (*Id.*) Respondents have not identified a third country to which Petitioner can be deported, let alone their progress in obtaining travel documents. At the hearing, Respondents' counsel indicated that it could take three months for Respondents to obtain travel documents for Petitioner to be deported to a third country. Given the lack of concrete steps Respondents have taken to effectuate Petitioner's removal to a third country, Respondents have not met their burden to show a "significant likelihood" of Petitioner's removal in the "reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 702. Moreover, even if Respondents had met their burden to show they had the authority

to re-detain Petitioner, such proof would not resolve whether Respondents could detain him without regard to the Due Process Clause's protections. In their brief and at the hearing, Respondents assert that the INA does not require a hearing and that "the government's authority to re-detain individuals previously released by DHS is discretionary, and it does not require the type of intensive evidentiary procedure that Petitioner suggests." (*Id.* at 4–5.) The Constitution's guarantee of due process may require a hearing even where a congressional statute may not. *Garcia Barrera v. Andrews*, No. 1:25-cv-01006 JLT SAB, 2025 U.S. Dist. LEXIS 162825, at *19 (E.D. Cal. Aug. 21, 2025) (citing *Young v. Harper*, 520 U.S. 143 (1997), and *Morrissey*, 408 U.S. 471); *see also Marbury v. Madison*, 5 U.S. 137, 180 (1803) ("[A] law repugnant to the constitution is void . . . .") Respondents have offered no compelling reason why they should be able to detain Petitioner, who has developed a significant liberty interest during his nearly four years on release and likely poses no danger to his community or risk of flight, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

### B. Irreparable Harm

Petitioner has established irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Given the Court's determination that Petitioner is likely to succeed on the merits of his due process claim and that Petitioner's present detention is likely unlawful, Petitioner faces irreparable harm absent injunctive relief.

### C.　Balance of Equities and Public Interest

The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' as discussed above, the Court concludes 'that the balance of hardships tips decidedly in [petitioner's] favor." *Singh*, 2025 U.S. Dist. LEXIS 132500, at *23 (alterations in original) (quoting *Hernandez*, 872 F.3d at 996). These factors favor relief.

### D.　Summary

All factors strongly favor injunctive relief. The Court grants a preliminary injunction.

At the hearing, Petitioner requested that the Court order that Petitioner be released without a requirement that he wear an ankle monitor. The parties did not brief this issue, and it is not clear that DHS will ultimately require Petitioner wear an ankle monitor upon his release. Accordingly, the Court declines the request without prejudice to renewal.

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." (internal quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal harms suffered by the government, the Court will not require a security.").

## IV. CONCLUSION

The Court on its own motion seals the documents supporting Petitioner's reply (ECF Nos. 10-1 and 10-2) and strikes them alongside the reply brief (ECF No. 10).

The application (ECF No. 2) is granted. The Court issues a preliminary injunction as follows:

Respondents shall release Petitioner from detention forthwith.

Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner without providing him a pre-detention hearing before a neutral immigration judge.

Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to Magistrate Judge Pedro V. Castillo.

**IT IS SO ORDERED.**

Dated: December 2, 2025

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE